IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**MARSHANDRA JEARNICE OZIEN HAGEN**                             **PLAINTIFF**

**v.**                                   **CIVIL ACTION NO.: 1:24-cv-164-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

## **ORDER**

Plaintiff received Supplemental Security Income based on disability as a child. Tr. 10, 88-94. As required by law, when Plaintiff turned 18, her eligibility for these disability benefits was redetermined under the rules for determining disability in adults. Tr. 10. On October 29, 2021, the Agency determined that Plaintiff was no longer disabled as of November 1, 2021. Tr. 10, 119-128. This determination was upheld on reconsideration after a disability hearing by a State agency disability hearing officer. Tr. 10, 173-175, 177-183. Plaintiff then requested a hearing before an ALJ, which was held on October 12, 2023.[1] While Plaintiff is presently represented by counsel, she waived her right to representation at the hearing and appeared without counsel. The ALJ issued a hearing decision on December 13, 2023, concluding that Plaintiff's disability ended on November 1, 2021, and she has not become disabled again since that date. Tr. 7-18.

Subsequently, Plaintiff requested review from the Appeals Council. On May 21, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. For the reasons that follow, the undersigned finds that the ALJ's decision shall be **AFFIRMED**.

---

[1] The transcript reveals that the hearing commenced at 1:45 p.m. and concluded at 2:18 p.m.

1

**The Case Below:**

Applying the sequential evaluation set forth in the Commissioner's regulations at 20 C.F.R. § 416.920(a)(4), the ALJ first found that Plaintiff attained age 18 on February 6, 2021, and was eligible for SSI benefits as a child for the month preceding the month in which she attained age 18, and that Plaintiff was notified that she was found no longer disabled as of November 1, 2021, based on a redetermination of disability under the rules for adults who file new applications. Tr. 12. At step two, the ALJ found that Plaintiff had severe impairments of osteogenesis imperfecta and scoliosis. Tr. 12. She was also found to have the non-severe impairments of teeth dysfunction, which the ALJ found to be mild. At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. Tr. 12-13.

The ALJ then assessed Plaintiff's residual functional capacity, finding that Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except she could lift/carry or push/pull ten pounds occasionally and less than ten pounds frequently; stand/walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps/stairs, but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl, and occasionally balance as the term is defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations; never reach overhead bilaterally but frequently reach in remaining directions; can use a cane to ambulate throughout the workplace; and must avoid all exposure to unprotected heights or dangerous moving machinery. Tr. 13.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work, which was as a greeter (DOT No. 324677014, medium, SVP 2, unskilled). Tr. 16. It was noted that

2

the Plaintiff had at least a high school education.[2] At step five, the ALJ found, based on Plaintiff's vocational profile and RFC, that, since November 1, 2021, Plaintiff retained the ability to perform a significant number of jobs in the national economy, as identified by the vocational expert. Tr. 17. Specifically, the vocational expert testified that given her RFC, Plaintiff would be able to perform the requirements of representative occupations such as an order clerk (D.O.T. #209.567-014) sedentary, SVP 2, unskilled, there are 100,000 jobs in the national economy, a call out operator (D.O.T. #237.367-014) sedentary, SVP 2, unskilled, there are 15,000 jobs in the national economy, and a charge account clerk (D.O.T.#205.367-014) sedentary, SVP 2, unskilled, there are 117,000 jobs in the national economy.

Accordingly, the ALJ found that Plaintiff's disability ended on November 1, 2021, and she had not become disabled again since that date. Tr. 17.

**Issues on Appeal:**

On appeal, the Plaintiff argues that (1) the ALJ "cherry-picked" the evidence, (2) the ALJ committed reversible error in failing to order another CE; and (3) the ALJ erred in allowing Ms. Hagen to proceed without an attorney.

**Evidence Considered by the ALJ and the Appeals Council:**

On December 13, 2018, the claimant presented to UMMC Medical Center with a follow-up for osteogenesis imperfecta. The claimant reported bilateral tibia pain from time to time. However, the provider noted a full range of motion of the hips, knees, and ankles without swelling or tenderness. No angular deformity was noted. The claimant's extremities demonstrated sensation intact to light touch and capillary refill less than two seconds distally. Examination revealed no

---

[2] At the hearing on October 12, 2023, Plaintiff indicated that she had obtained an associate's degree online in arts, and intended to continue school to obtain her bachelor's.

3

tenderness, swelling, deformities, instability, weakness, or atrophy and range of motion was full and painless in the unaffected extremities. The provider also noted the claimant's HKA was stable with healed fractures and closed physes. No evidence of tibia pathology. The claimant underwent implants at age 6. The provider recommended activity as tolerated, follow-up as needed, but they will not plan an implant removal because it would be a significant osteotomy bilaterally to remove them and they are not bothering her at this time. A radiology report showed that the claimant's hardware was intact with a mild leg length discrepancy.

On April 8, 2021, the claimant's mother, Lashanda Hagen, submitted a function report. The ALJ afforded limited persuasive weight to this lay opinion because he found that it was generally inconsistent with the overall evidence of record.

On October 9, 2021, the claimant underwent a physical consultative examination with Ashlee Griffin, D.O., wherein the claimant alleged disability due to osteogenesis imperfecta resulting in fragile bones. The claimant reported symptoms of leg aches and bone aching at night. The claimant reported x-rays and a bilateral leg surgery with placement. The claimant reported that this affects her ability to work due to severe walking problems, standing for long periods, or performing physically. The ALJ found that Dr. Griffin's opinion is not persuasive as it is inconsistent with the examination observations that show some strength deficits in the hips, that would support the standing and walking limitations, so the ALJ found that the claimant has more limitations.

On December 1, 2022, the claimant's treating provider, Patrick Wright, M.D., drafted a letter reporting the claimant had a severe hereditary condition called osteogenesis imperfecta. This is otherwise known as brittle bone disease in which her bones will fracture easily and sometimes without a mechanism of injury. She has had many fractures in the past and has had surgeries in the

4

past to place rods in er bones to try to strengthen them, prevent fractures and help her walk for extended periods of time. The claimant is not allowed to participate in any strenuous activities or contact sports of any kind. This includes running, skipping, hopping, etc. She cannot perform activities that her peers do. She must be very cautious of what she does. This is a life-long impairment. She is under the care of the pediatric orthopedic surgeon team at UM Medical Center. The ALJ found partial persuasive value in Dr. Wright's opinion, as he does not provide a functional assessment to include any weight limits or limits with sitting or standing.

The ALJ found that while the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. More specifically, he stated: "In sum, the medical records fail to document any evidence of significant limitations or restrictions since her alleged onset date. Her treatment records document a history of conservative physical treatment, with no further treatment suggested. Therefore, her statements concerning the intensity, persistence and limiting effects of her symptoms are not consistent to the extent, as they are inconsistent with the above residual functional capacity assessment."

The Two State Agency Consultants:

On October 29, 2021, a State Agency Medical Consultant, Thomas Jeffcoat, M.D., completed an examination review of the claimant's medical records. Dr. Jeffcoat determined that the claimant's impairment of other and unspecified arthropathies were severe. Dr. Jeffcoat determined that the claimant could perform at the medium exertional work level with six hours of standing, walking, or sitting in an eight-hour workday.

5

On May 17, 2022, a State Agency Medical Consultant, Bradley Stephen, M.D., completed an examination review of the claimant's medical records and reaffirmed Dr. Jeffcoat's determination. The ALJ granted some persuasive value to the State Agency's determination, as their determinations are somewhat consistent with the preponderance of evidence. However, additional evidence was received at the hearing level that supported additional limitations.

Appeals Council:

On March 7, 2024, SSA sent Plaintiff a letter granting her request for more time before it acted on her case. Tr. 27.

Then, on May 21, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1. With regard to additional evidence, the claimant submitted an Earnings Statement from May 22, 2023, through September 24, 2023 (3 pages), Earnings Statement from April 10, 2023, through May 21, 2023 (9 pages) and Earnings Statement from September 23, 2023, through October 22, 2023 (2 pages); letter from Patrick Wright, M.D. dated February 29, 2024 (1 page). The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the decision.

The claimant also submitted letters from Nichole Powell, LPN dated February 29, 2024 (1 page) and Patrick Wright, M.D. dated March 27, 2024 (1 page). However, because the Administrative Law Judge decided the case through December 13, 2023, the additional evidence did not relate to the period at issue.[3] Therefore, these two letters did not affect the decision about whether the claimant was disabled beginning on or before December 13, 2023.

---

[3] The undersigned notes that the March 27, 2024, letter from Dr. Patrick Wright stated, "Marshandra Hagen is under my care for right hip coxa valga with an underlying diagnosis of osteogenesis imperfecta. She is scheduled for hip reconstruction on 11/11/24." Tr. 29. The February 29, 2024, record from Nichole Powell, LPN, with Children's of

On July 18, 2024, Plaintiff sent a letter requesting "an extension" on her case because she was seeking legal services. Tr. 26. On August 8, 2024, Appeals Council received Plaintiff's request for more time to file a civil action and extended her time to file the civil action for an additional 30 days. Tr. 24.

**Standard of Review:**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is

---

Mississippi UMMC Pediatric Orthopaedics, also noted that claimant's surgery was scheduled with Dr. Patrick Wright for November 11, 2024. Tr. 30. However, as noted above, neither of these letters relate to the period at issue.

7

appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The claimant has the burden of proof at the first four steps of the sequential evaluation process. *See Greenspan*, 38 F.3d at 236. At step five, the Commissioner has the burden to produce evidence about the existence of work in the national economy. *See* 20 C.F.R. § 404.1512(b)(3). Once the Commissioner shows that a claimant's RFC and vocational profile would allow performing a significant number of jobs in the national economy, the burden shifts to the claimant to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

**Law and Analysis:**

1. <u>The ALJ did not "cherry-pick" the evidence.</u>

As discussed above, Plaintiff's mother Lashandra Hagen, submitted a Function Report dated April 8, 2021. Tr. 326. Plaintiff first argues that the ALJ "cherry-picked" the evidence when discussing this Function Report because he discussed at length her abilities but mentioned "very little" about her disabilities. Pl.'s Br. [12] at 10. Plaintiff also notes that at the hearing, the ALJ did not ask her how long she could stand, walk, sit or lift. In addition, Plaintiff argues that when the ALJ noted that Dr. Wright did not provide a functional assessment to include any weight limits or limits with sitting or standing, he "had every right, ability and obligation to request additional opinion evidence." *Id.*

Plaintiff is correct that the ALJ must consider all of the record evidence and cannot "pick and choose" only the evidence that supports his position. *Loza v. Apfel*, 219 F.3d 378, 393-394 (5th Cir. 2000). Further, "Where an ALJ merely uses boilerplate or template language to state summary conclusions based on cherry-picked evidence that supports only his decision, that decision is not

8

supported by substantial evidence." *Gonzalez v. Commissioner*, 4:14-cv-104-SAA, Mar. 31, 2015; citing *Burnett v. Commissioner*, 220 F.3d 112, 119-20 (3rd Cir. 2000).

While the Commissioner acknowledges that this is the law, the Commissioner notes that "the ALJ specifically mentioned the portions of the Function Report that revealed limitations." Def.'s Br. [13] at 6. Specifically, the ALJ noted that Plaintiff's mother reported that the Plaintiff:

> was born with her condition and she has always been limited; aches and swells because she has rods in her hips that cause her discomfort; sometimes has to have help with bathing and dressing; could prepare frozen dinners and sandwiches, but she had never cooked with pots and pans; does not do chores; and could ride in a car, but did not drive.

*Id.*, citing Tr. 15, 327-329.

The Commissioner also argues that the ALJ did not have an obligation to request additional opinion evidence from Plaintiff's treating physician, Dr. Patrick Wright, simply because the "to whom it may concern" letter did not provide a functional assessment to include any weight limits or limits with sitting and standing. In support of this contention, the Commissioner relies upon *Cornett v. Astrue*, wherein the Fifth Circuit held that the lack of a statement from a plaintiff's treating physician as to what the plaintiff could still do in spite of his impairments did not automatically render the physician's report incomplete. 261 F. App'x 644, 649 (5th Cir. 2008). The ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability. *Id.* Further, reversal of an ALJ's opinion that a claimant is not disabled, based on the ALJ's failure to request additional information from the claimant's treating physician, is appropriate only if the applicant shows prejudice. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Similar to *Cornett*, there is no basis for us to conclude that recontacting Dr. Wright would have overcome the medical evidence in the record and altered the ALJ's decision. *See Cornett,* 261

9

F. App'x at 649. Here, the ALJ could have reasonably relied upon the Plaintiff's December 13, 2018, UMMC Medical Center follow-up for osteogenesis imperfecta. In that note, while the claimant reported bilateral tibia pain from time to time, the provider noted a full range of motion of the hips, knees, and ankles without swelling or tenderness. The provider recommended activity as tolerated, follow-up as needed, but they will not plan an implant removal because it would be a significant osteotomy bilaterally to remove them and they are not bothering her at this time. A radiology report showed that the claimant's hardware was intact with a mild leg length discrepancy.

Because we cannot say that the Plaintiff was prejudiced by the ALJ's decision not to recontact Dr. Wright, there is no basis for reversal. While Plaintiff also argued that the ALJ did not ask her how long she could stand, walk, sit, or lift at the hearing, the ALJ did, in fact, ask the Plaintiff to explain why she could not work a full-time job. In her response, the Plaintiff detailed her issues with lifting, prolonged sitting, and leg aching/swelling. However, in his decision, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 15. Further, the ALJ noted that while the claimant may have some limitations or restrictions, she is not as limited as her subjective complaints. *Id.* Such inquiry meets the substantial evidence standard.

2. The ALJ did not commit reversible error in failing to order another CE.

As for her second argument, Plaintiff argues that because the ALJ found Dr. Griffin's opinion not persuasive, he should have ordered another consultative examination. Pl.'s Br. [12] at 15. In response, the Commissioner argues that the Court should not reverse the decision of an ALJ for failure to fully and fairly develop the record unless Plaintiff can show that she was prejudiced by

10

the ALJ's failure, and to establish prejudice, Plaintiff must demonstrate that she could and would have adduced evidence that might have altered the result. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). "To show such prejudice a Plaintiff must present more than mere speculation." *Beggs v. Colvin*, No. 4:14-CV-129-O, 2015 WL 5542540, at *8 (N.D. Tex. Aug. 31, 2015), report and recommendation adopted, No. 4:14-CV-00129-O, 2015 WL 5547010 (N.D. Tex. Sept. 15, 2015). The Commissioner argues that the Plaintiff has not met this burden and thus, no reversible error exists.

Here, Plaintiff was sent for a physical CE with Dr. Griffin on October 9, 2021. Tr. 14-15, 403-407. Dr. Griffin's examination findings were almost all normal. Based on her examination findings, Dr. Griffin opined that Plaintiff had no limitations with sitting, standing, or walking; she did not need an assistive device for short and long distances or for uneven terrain; and she did not have significant limitations with lifting or carrying weight. Tr. 14, 407. Dr. Griffin did find that Plaintiff was limited to frequently bending, stooping, crouching, and squatting due to a history of osteogenesis imperfecta. Tr. 14-15, 407. However, Dr. Griffin found no limitations on reaching, grasping, handling, fingering, and feeling, and no relevant visual, communicative or workplace environmental limitations. Tr. 407.

The ALJ ultimately found Dr. Griffin's opinion not persuasive as it was inconsistent with the examination observations that revealed some strength deficits in the hips, that would support standing and walking limitations. Tr. 15. Thus, the ALJ found that Plaintiff had more limitations, and crafted an RFC using all of the evidence available to him to account for those limitations.

The law provides that the decision to order a consultative examination is within the ALJ's domain. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Further, "an examination at government expense is not required unless the record establishes that such an examination is

necessary to enable the administrative law judge to make the disability decision." *Id.* "The ALJ properly interpret[s] the medical evidence to determine [a claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012). The assessment of a claimant's work capacity is reserved solely to the ALJ and is based on all the evidence, not just the medical evidence. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. § 416.945(a)(3); SSR 96-8p at *3.

While Plaintiff may have desired for the ALJ to order a second CE, the undersigned cannot find that to do so was necessary. Put simply, the ALJ did not have to order a second CE in order to meet the substantial evidence threshold.

3. <u>The ALJ did not err in allowing Ms. Hagen to proceed without an attorney.</u>

At the hearing, Ms. Hagen made the decision to proceed without representation after the following exchange with the ALJ:

> ALJ: All right. Well, ma'am, I want to go over your rights to representation. So, if you would please, listen to me very carefully. You do have the right to be represented by an attorney or a non-attorney in this process. A representative can help you obtain information about the claim, explain medical terms, help protect your rights and make any requests about a proceeding that is before me. A representative may not charge a fee or receive a fee unless we approve it. If you appoint a representative, you may be responsible for certain expenses such as obtaining or copying medical records. Some legal service organizations do offer free representation if you can satisfy the requirements of that organization. You do have the right to proceed today and represent yourself if you feel comfortable doing so. If you wish to represent yourself, I will question you at this hearing and then try to obtain any outstanding relevant medical or non medical records for the claim. So, Ms. Hagen, do you understand your rights to representation?
>
> CLMT: Yes, sir.
>
> ALJ: Do you wish to proceed today and represent yourself or postpone the matter to a later date so you can try to find a representative?
>
> CLMT: I can represent myself.

Tr. 71-72.

Plaintiff's counsel, who entered an appearance for the purposes of the instant appeal, argues that the ALJ did not go into detail to determine whether Ms. Hagen understood her rights. Pl.'s Br. [12] at 18. Counsel for Plaintiff also notes that Ms. Hagen declined to examine the vocational expert regarding her opinions. In response, the Commissioner argues that the record reveals that Plaintiff was given adequate notice and an opportunity to obtain counsel to represent her at the hearing.

Further, this was not Ms. Hagen's first social security hearing. Ms. Hagen had previously been represented at social security hearings by her current counsel, Joe Morgan Wilson. As was discussed at the hearing of this matter on February 19, 2025, it is unclear why Ms. Hagen chose to proceed without counsel during the October 12, 2023, hearing. Nonetheless, the Court does not find that she made that decision without having adequate notice and an opportunity to obtain counsel.

While there is no constitutional right to representation at a social security hearing, a claimant has a statutory right to representation. *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992); 42 U.S.C. § 406. Any waiver of this right must be "knowingly and intelligently effected." *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex. 1997) (citing *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996)).

In his brief, the Commissioner detailed the numerous efforts made to notify the Plaintiff of her right to counsel:

> When Plaintiff was found no longer disabled as of November 1, 2021, she, on December 7, 2022, requested a hearing before an ALJ (Tr. 10, 180). At that time, Plaintiff was provided multiple written notices of her right to counsel: (Tr. 182), sent on January 30, 2023 ("Your Right to Representation"); (Tr. 185-188), sent on January 30, 2023, ("Your Right to Representation," a form which laid out how a representative can aid in the proceedings, the possibility of free counsel or a contingency arrangement, the limitation of attorney fees to 25% of past due benefits, and the required court approval of said agreement); (Tr. 206), sent on

13

>January 31, 2023, ("Your Right to Representation"); (Tr. 210-213), sent on January 31, 2023 (a second "Your Right to Representation" form); (Tr. 220), sent on March 24, 2023, a "A Representative Could Help With Your Appeal;" (Tr. 225-226), sent on March 24, 2023 (a third "Your Right to Representation," form); (Tr. 241), sent on July 24, 2023, (another a "A Representative Could Help With Your Appeal);" (Tr. 246-247), sent on July 24, 2023 (a fourth "A Representative Could Help With Your Appeal"); and on September 25, 2023, a contact from the hearing office provided Plaintiff with information regarding her right to representation and Plaintiff affirmed understanding of that information and was provided with contact information for representatives/representative organizations (Tr. 253). This evidence, along with Plaintiff's prior hearings, further demonstrates that Plaintiff was aware of her right to representation before the Social Security Administration.

Def.'s Br. [13] at 14-15.

As the Commissioner noted, during Plaintiff's hearing on her childhood disability claim on February 7, 2020, she was informed by the ALJ at the outset of the hearing that she had a right to have a representative at her hearing. Similar to the choice presented by ALJ Mashburn in this case, Ms. Hagen was given the choice to proceed with the hearing or continue it to a later date in order to obtain a representative. The witness asked the ALJ, "If we decide to continue today, and it doesn't go in our favor, can we come back with a representative?" The ALJ responded, "No. You only get one bite at the apple." The witness then acknowledged, "One bite at the apple," and decided, "We're going to come back with a representative." *Id.*

The Fifth Circuit has held that if pre-hearing notification provides adequate information regarding the right to representation, the ALJ need only remind the claimant of that right and confirm that she wishes to appear without representation. *See Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). In this case, Plaintiff was familiar with the procedure for social security hearings since she had previously elected to continue a hearing in order to obtain representation. She received multiple written notices from the Social Security Administration regarding her right to representation. Thereafter, at the hearing on October 12, 2023, Plaintiff averred that she

14

understood her rights to representation and wanted to represent herself. Accordingly, the undersigned finds that this issue is without merit.

**Conclusion:**

In conclusion, I find that the ALJ's opinion is supported by substantial evidence. Accordingly, the ALJ's decision shall be and is hereby **AFFIRMED.**

**SO ORDERED** this, the 20th day of February, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**